## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

LESLIE WEISE,

      Plaintiff,

v.

COLORADO SPRINGS, COLORADO, a municipality,
ANDRES PICO, in his official and individual capacity,
BILL MURRAY, in his official and individual capacity,
AMY TRINIDAD, in her individual capacity,
WYNETTA MASSEY, in her official and individual capacity,
TOM STRAND, in his official and individual capacity,
HELEN COLLINS, in her official and individual capacity,
KEITH KING, in his official and individual capacity,
JILL GAEBLER, in her official and individual capacity,
LARRY BAGLEY, in his official and individual capacity,
DON KNIGHT, in his official and individual capacity,
MERV BENNETT, in his official and individual capacity,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

      Plaintiff Leslie Weise, by and through her attorneys David A. Lane and Andy McNulty of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her Complaint and Jury Demand as follows:

### INTRODUCTION

    1. Alternative facts. Fake news. We live in an age of both. Colorado Springs has sought, over the last year, to take advantage of our age of disinformation and actively lie to its constituents. Leslie Weise sought to expose one of these lies. Her reward? A nearly year-long campaign of retaliation and defamation that sought to discredit her and ruin her reputation in her

1

community for exposing the fact that the Martin Drake Power Plant was spewing noxious pollution in violation of Environmental Protection Agency regulations in the backyard of Colorado Springs and Manitou Springs residents.

2.  Ms. Weise blew the whistle on a government entity engaged in the slow-poisoning of Colorado Springs' residents. Initially, Ms. Weise was simply attempting to learn if the municipally owned and operated power plant near her son's school was emitting unsafe levels of pollution, as all of the existing data available to the public at that time indicated was the case. In an effort to learn what information Colorado Springs possessed about the Martin Drake Power Plant's pollution, she filed an open records request, seeking any studies that would detail whether Colorado Springs Utilities knew whether the Martin Drake Power Plant was in compliance with standards set out by the Environmental Protection Agency. Instead of providing Ms. Weise with just such a report (which was in their possession having been recently commissioned and received from their contracted air quality services vendor), Colorado Springs has covered up and buried the report while issuing a blanket denial of her request for the public information.

3.  Doggedly, Ms. Weise pursued the release of these records through the state courts. After having her request denied again at the district court level, Ms. Weise appealed the ruling. During the appeal, the clerk for the Colorado Court of Appeals sent Ms. Weise the record on appeal. As she was observing the documents sent by the clerk, Ms. Weise noticed an air quality report that turned out to be the report she had been seeking all along. She also noticed that the report confirmed her suspicions: the Martin Drake Power Plant was determined to be violating the Environmental Protection Agency's National Ambient Air Quality Standard for sulfur dioxide pollution and was emitting this pollution in an area where Ms. Weise's child attended school, among other areas where many people were being exposed to unsafe air quality.

4.   Recognizing that the Clerk of the Court of Appeals may have mistakenly sent her the very report Defendant Colorado Springs was attempting to hide from the public, Ms. Weise immediately sought guidance from the Court of Appeals to determine what she should do with the additional records. The Colorado Court of Appeals' order required that both parties return the disc they had been mailed. Ms. Weise was further ordered to not distribute the sealed material, nor download, retain, or disseminate the record. The Colorado Court of Appeals did not order that Ms. Weise could not discuss the sealed material or share any publicly filed motions she had submitted.

5.   Ms. Weise then contacted the Colorado Springs Gazette. She shared the motions she had filed when seeking clarification on what to do with the additional documents. Based on these motions and comment provided by Ms. Weise, the reporter published a story exposing the Martin Drake Power Plant as a public nuisance that was actively harming Colorado Springs residents by emitting unsafe levels of pollution. Importantly, Ms. Weise did not share the documents she had received from the clerk with the reporter, or anyone else subsequent to the Court of Appeals' orders.

6.   In response to the Colorado Springs Gazette article, Colorado Springs filed a motion to hold Ms. Weise in contempt of court. Thus, began a campaign by Colorado Springs, and its officials, of defamation and retaliation against Ms. Weise, simply because she legally spoke out on a matter of important public concern.

7.   Over the next six months, one or more Colorado Spring City Council members stated publicly that Ms. Weise's statement regarding the emissions at the Martin Drake Power Plant were lies. Another City Council member stated that Ms. Weise committed a crime when she disclosed the information about the harmful emissions at the Martin Drake Power Plant, and that

she knew she was committing a crime when she did so. A spokeswoman for Colorado Springs

Utilities also defamed Ms. Weise, stating that she violated the law.

8.   Colorado Springs continued defamation and retaliation culminated in March and April

2017, when the Colorado Springs City Council voted to take formal action to seek that Ms.

Weise be disciplined with the professional associations in the multiples states outside of

Colorado Ms. Weise had been admitted to practice law and presently holds (or previously held)

professional licensure, accusing her of professional misconduct and violations of the law. The

City Attorney herself, Wynetta Massey, sent these complaints using taxpayer resources and on

official Colorado Springs letterhead. Each one of these actions were undertaken to retaliate

against Ms. Weise for legally and rightly speaking out on a matter of public concern. All told,

this campaign against Ms. Weise has cost Colorado Springs taxpayers at least one hundred

thousand dollars in public funds.

9.   In the end, Ms. Weise has suffered damage to her reputation in her community, endured

emotional distress which led to physical pain and suffering, and was forced to hire multiple

attorneys in several states to defend both against the contempt and formal actions filed against

Plaintiff concerning her professional licensure.

10. If Ms. Weise had been wrong in her assessment of the Martin Drake Power Plant,

Colorado Springs could have simply released the documents it sought to keep secret. That it did

not is telling. Notably, in August 2017, Colorado Springs did publicly release another air quality

report showing that the Martin Drake Power Plant is presently in compliance with federal

standards, but continues to keep the previous report showing that the Martin Drake Power Plant

was spewing toxic levels of sulfur dioxide secret from the public. Ms. Weise seeks to hold

Colorado Springs accountable for its campaign of disinformation and defamation meant to inoculate a powerful municipal corporation from public scrutiny.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1441. This action is authorized and instituted pursuant to 42 U.S.C. § 1983 and the State Law of Colorado. Jurisdiction supporting Plaintiff's claims for attorney's fees and costs is conveyed by 42 U.S.C. § 1988.

12. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).

## PARTIES

13. Plaintiff Leslie Weise is a citizen of the United States and State of Colorado and was during the relevant times described herein.

14. At all times relevant to the allegations of this Complaint, Defendant Andres Pico was a Colorado Springs City Council member. He is a citizen of the United States and resident of the State of Colorado.

15. At all times relevant to the allegations of this Complaint, Defendant Bill Murray was a Colorado Springs City Council member and Colorado Springs Utility Board member. He is a citizen of the United States and resident of the State of Colorado.

16. At all times relevant to the allegations of this Complaint, Defendant Amy Trinidad was a Colorado Springs utilities employee. She is a citizen of the United States and resident of the State of Colorado.

17. At all times relevant to the allegations of this Complaint, Defendant Wynetta Massey was the Colorado Springs City Attorney. She is a citizen of the United States and resident of the State of Colorado.

18. At all times relevant to the allegations of this Complaint, Defendant Tom Strand was a Colorado Springs City Council member. He is a citizen of the United States and resident of the State of Colorado.

19. At all times relevant to the allegations of this Complaint, Defendant Helen Collins was a Colorado Springs City Council member. She is a citizen of the United States and resident of the State of Colorado.

20. At all times relevant to the allegations of this Complaint, Defendant Keith King was a Colorado Springs City Council member. He is a citizen of the United States and resident of the State of Colorado.

21. At all times relevant to the allegations of this Complaint, Defendant Jill Gaebler was a Colorado Springs City Council member. She is a citizen of the United States and resident of the State of Colorado.

22. At all times relevant to the allegations of this Complaint, Defendant Larry Bagley was a Colorado Springs City Council member. He is a citizen of the United States and resident of the State of Colorado.

23. At all times relevant to the allegations of this Complaint, Defendant Don Knight was a Colorado Springs City Council member. He is a citizen of the United States and resident of the State of Colorado.

24. At all times relevant to the allegations of this Complaint, Defendant Merv Bennet was a Colorado Springs City Council member. He is a citizen of the United States and resident of the State of Colorado.

25. Defendant Colorado Springs, Colorado is a municipality and as such is a proper defendant under § 1983.

26. All Defendants acted under color of state law at all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

27. In August, 2015, Ms. Weise submitted a request for records to Colorado Springs under the Colorado Open Records Act for any air quality studies the Colorado Springs Utilities, an enterprise of Colorado Springs, conducted and/or commissioned from its air quality services vendor AECOM Technical Services, Inc. during an official review by the United States Environmental Protection Agency to determine whether the Colorado Springs region had air quality that was in attainment of the National Ambient Air Quality Standard for sulfur dioxide pollution from emissions by the Martin Drake Power Plant.

28. In its response to Ms. Weise's records request, Colorado Springs refused to release an air quality study AECOM Technical Services, Inc. had conducted by request of Colorado Springs Utilities in 2015 (herein referred to as the "Air Quality Study"), citing attorney client privilege and work product. Ms. Weise challenged the privileged status of the Air Quality Study in El Paso County District Court in December 2015.

29. On May 5, 2016, the District Court ruled in favor of Colorado Springs' Motion for Summary Judgment and found Colorado Springs had properly treated the withheld air quality related information as privileged up to that point and, therefore, was justified in continuing to do so under the attorney client and work product privilege exceptions to the Colorado Open Records Act.

30. Ms. Weise decided to appeal the District Court's ruling based on what she believed were errors in fact and law, including factual misrepresentations made by Colorado Springs to the District Court.

31. On June 22, 2016, Ms. Weise filed an appeal of the District Court ruling with the Colorado Court of Appeals.

32. Subsequently, the Clerk's Office of the Colorado Court of Appeals mailed each of the parties a disc containing electronic files of the relevant record.

33. In November 2016, when Ms. Weise opened the files that had been mailed to her, Ms. Weise found an Air Quality Study that turned out to be that which she had been seeking release was included. Ms. Weise became alarmed and distressed over what she observed upon her brief review of the file; namely that it was shown through professional modeling commissioned by Colorado Springs Utilities that the Colorado Springs region had been, and likely still was, exposed to air quality above levels deemed safe under the National Ambient Air Quality Standard.

34. Ms. Weise's eleven-year-old son attends public elementary school in an area deemed unsafe by all professional air quality modeling studies conducted to date of the 2015 Environmental Protection Agency review of the Martin Drake Power Plant, including the Air Quality Study being withheld by the Colorado Springs Utilities.

35. Ms. Weise promptly and diligently reviewed any relevant responsibilities that may exist under the unique circumstances she was facing. She reviewed the Rules of Professional Conduct of the state of Colorado (where she resides and made the Colorado Open Records Act request) and California (where she is licensed to practice law in continuous good standing). Ms. Weise also conferred with multiple lawyers regarding the ethical and legal issues that could be implicated, along with contacting the Ethics HotLine of both states.

36. Over the next few days, Ms. Weise filed several motions with the Colorado Court of Appeals. Ms. Weise sought in these motions an emergency hearing, guidance from the court, and

immediate publication of the information contained in the Air Quality Study. Ms. Weise believed

that publication of the study was of high importance to public health and the safety of the

hundreds of thousands of residents and visitors who live and frequent the vicinity of the Martin

Drake Power Plant in Colorado Springs, including her son and his classmates and the many other

exposed children and elderly who are particularly vulnerable to the known adverse health

impacts of sulfur dioxide pollution.

37. On November 16, 2017, the Colorado Court of Appeals filed an order clarifying that a

sealed file had inadvertently been sent to Ms. Weise by the Colorado Court of Appeals. The

Colorado Court of Appeals' order required that both parties return the disc they had been mailed.

Ms. Weise was further ordered to not distribute the sealed material nor download, retain, or

disseminate the record. Importantly, the Colorado Court of Appeals did not order that Ms. Weise

could not discuss the sealed material.

38. Out of an abundance of caution (and respect for the judiciary), Ms. Weise confirmed with

the Colorado Court of Appeals that the Colorado Court of Appeals' order did not prevent her

from sharing her publicly filed motions or speaking about the contents of the documents that had

been inadvertently disclosed to her. The Colorado Court of Appeals confirmed that Ms. Weise

was not legally barred from doing either.

39. Ms. Weise shared the first two motions she filed with the Colorado Court of Appeals with

a reporter with the Colorado Springs Gazette, and others, via email. In the motions, Ms. Weise

stated that: (1) records affecting public health and safety "have been improperly withheld"

though people near the Martin Drake Power Plant might be exposed to dangerous levels of sulfur

dioxide. Weise's then 10-year-old son attends a Colorado Springs public charter school located

within the Martin Drake Power Plant emissions plume; (2) Colorado Springs Utilities "has

consistently declared to the public and regulatory authorities that it is in compliance with those (SO2) regulations and standards" though it had a duty to report its findings of violations to the Environmental Protection Agency, and a public safety fiduciary duty to report those findings to the public; (3) withholding the report by citing attorney-client privilege was "an egregious abuse of the CORA (Colorado Open Records Act) laws." Ms. Weise also provided comment to the reporter from the Colorado Springs Gazette.

40. Based on these motions, on November 21, 2016, the Colorado Springs Gazette published a story regarding Ms. Weise's observations of the Air Quality Study. The article states that the "sulfur-dioxide emissions from the coal-fired Martin Drake Power Plant violated federal standards contrary to filings by Colorado Springs Utilities" and attributed this conclusion to Ms. Weise. The article also quotes Ms. Weise's publicly filed motion. It does not quote the report and explicitly states that Ms. Weise returned the report to the Colorado Court of Appeals, as she was obliged to do. Amy Trinidad, the spokeswoman for Colorado Springs Utilities, is also quoted in the article disputing Ms. Weise's characterization of the Air Quality Study and implicating that Ms. Weise was fabricating her account of the data.

41. Ms. Weise's statements regarding the Air Quality Study were a matter of great public concern. Ms. Weise's observations had wide ranging impacts for those interested in governmental and private compliance with federal Environmental Protection Agency regulations and directly impacted members of the Colorado Springs community who were, unknowingly, living and working in an area that contained unsafe levels of one or more noxious pollutants.

42. After publication of the Colorado Springs Gazette article that quoted Ms. Weise, on November 22, 2016, Colorado Springs filed a "Cross Motion for Order to Show Cause" why Ms. Weise should not be held in contempt of court with the Colorado Court of Appeals, and

requested that the Colorado Court of Appeals impose punitive sanctions against Ms. Weise for her discussion of the Air Quality Study with the Colorado Springs Gazette and others. The punitive sanctions sought by Colorado Springs included jail time, attorney fees, and fines.

43. Colorado Springs motion, which sought to hold Ms. Weise in contempt of court, was filed explicitly in retaliation for Ms. Weise's First Amendment-protected speech regarding the Air Quality Study and with the purpose of chilling Ms. Weise from speaking further regarding the Air Quality Study.

44. Due to her fear of prosecution by Colorado Springs, Ms. Weise has not discussed any of the specific contents of the Air Quality Study included in the sealed file subsequent to Colorado Springs filing its "Cross Motion for Order to Show Cause" and has only repeated the generalizations of the Air Quality Study that she had previously made prior to the filing of the "Cross Motion for Order to Show Cause" (which were already in the public record and which Ms. Weise had confirmed complied with the Colorado Court of Appeals' November 16, 2017 and November 17, 2017 orders).

45. In accordance with Colorado Springs' "Cross Motion for Order to Show Cause," which requested punitive sanctions against Ms. Weise, on December 6, 2016, the Colorado Court of Appeals served an order to show cause on Ms. Weise at her home in the presence of her son and elderly mother.

46. Ultimately, on February 8, 2017, Colorado Springs' "Cross Motion for Order to Show Cause" was dismissed with prejudice.

47. At no point did Ms. Weise violate any law or rule of professional conduct, or was she found to be in violation of the law, to have illegally disclosed documents or information, or to have violated any court order.  Ms. Weise diligently researched and ensured her actions were in

compliance with the rules of professional conduct governing the legal profession, although she is not licensed to practice law in Colorado and has acted in a pro se capacity in her actions with the Colorado courts.

48. In conjunction with its filing of the "Cross Motion for Order to Show Cause," which sought punitive sanctions against Ms. Weise, multiple Colorado Springs officials made numerous false and defamatory statements about Ms. Weise and her speech regarding the Air Quality Study to members of the public, including statements made to the Colorado Springs Gazette, to concerned citizens, and during public meetings. These false and defamatory statements were intentionally made with malice or, at the very least, made negligently. The statements were part of a campaign by Colorado Springs officials to publicly discredit Ms. Weise, and vilify her within the Colorado Springs community, in the hopes that the alarming results of the Air Quality Study Colorado Springs Utilities had commissioned using public funds could be swept under the rug.

49. In furtherance of these goals, Andres Pico, a member of the Colorado Springs City Council and former Colorado Springs Utilities Board Chair, stated intentionally and with malice, or at the very least negligently, in an email communication dated November 30, 2016, to a Colorado Springs resident and concerned citizen Nicole Rosa that Ms. Weise's statements about the Air Quality Study that were reported in the Colorado Springs Gazette were "not true."

50. Further, Mr. Pico wrote the following in an email to another Colorado Springs resident and concerned citizen, dated December 5, 2016: "The information in the article is not accurate nor are [Ms. Weise's] allegations being stated at all true… The allegation [from Ms. Weise] is that the study proves past violations of air quality standards. That allegation is absolutely false."

51. Mr. Pico again made intentional and malicious, or at the very least negligent, statements about Ms. Weise in an email exchange, dated December 16, 2016, with another Colorado Springs resident and concerned citizen, Jacquie Ostrom, stating:

> Mr. Pico: "With all due respect you do not 'know the results of the report' because what you have read in the paper is not true."
> Ms. Ostrom: "Leslie Weise observed that the report showed violations of the Standard."
> Mr. Pico: ""What was reported in the paper [the statement made by Weise, as reported in the Gazette] is not true."
> Ms. Ostrom: "Mr. Pico, Here's a quote from the article – what part of it is not true? The report shows that the Drake plant exceeded federal limits on SO2 emissions."
> Mr. Pico: "That statement is not true."

52. Mr. Pico also stated orally, at the outset of a monthly meeting of the Colorado Springs Utilities Board on December 19, 2016: "The report that the Drake Power Plant has been in violation is simply not true. I'm just going to say that flat out. … I want to have Mr. Forte provide a short discussion here about what actions we are taking and cover a little bit of the actual truth." After this initial statement, Mr. Pico allowed Mr. Forte, the Chief Executive Officer of Colorado Springs Utilities, to have the floor for a coordinated presentation, which lasted over twenty minutes in duration, the purpose of which was discrediting and defaming Ms. Weise. Mr. Pico spoke out multiple other times during the meeting to make false statements about Ms. Weise's representation of the Air Quality Study to the Colorado Springs Gazette, essentially stating that Ms. Weise was a liar.

53. Mr. Pico did not phrase any of his statements as though they were merely an opinion or in such a way as to reasonably imply that the question of whether Ms. Weise had lied about the contents of the Air Quality Study was still open to dispute.

54. Bill Murray, a member of the Colorado Springs City Council and Colorado Springs Utilities Board Member, made defamatory statements about Ms. Weise intentionally and

maliciously, or at least negligently. In an email reply to concerned citizen Lee Milner regarding Ms. Weise on December 1, 2016, Mr. Murray stated: "You know I do not like it. However, what she did she knew was illegal."

55. Moreover, on or about December 2, 2016, at a public forum, Mr. Murray made similar statements to Ms. Ostrom, asserting as fact that Ms. Weise's actions in speaking publicly about the Air Quality Study were illegal. These statements were overheard by multiple people attending the event in addition to Ms. Ostrom.

56. Mr. Murray did not phrase either of these statements as though they were merely an opinion or in such a way as to reasonably imply that the question of whether Ms. Weise's conduct through the statements she made about the Air Quality Study was still open to dispute.

57. Mr. Murray's statements falsely accused Ms. Weise of engaging in criminal behavior; therefore, they are defamatory *per se*.

58. Amy Trinidad, an employee of Colorado Springs Utilities, also made false and defamatory statements regarding Ms. Weise that were intentional and with malice, or at the very least negligent. Ms. Trinidad stated to Pam Zubeck, a reporter for the Colorado Springs Independent media company, that "Ms. Weise may have violated [the Colorado Court of Appeals] court order when she public discussed documents sealed by the District Court... We want to clarify the information regarding the impact of Martin Drake Power Plant on air quality. This plant meets all [Environmental Protection Agency] and [Colorado Department of Public Health and Environment] air regulatory requirements." The District Court had never sealed the Air Quality Study, nor specifically imposed any affirmative obligation or order on Ms. Weise.

59. Ms. Trinidad's statement that Ms. Weise allegedly violated the law by discussing court documents, which were not sealed, was defamatory *per se*.

14

60. Ms. Trinidad did not phrase her statement as though they were merely an opinion or in such a way as to reasonably imply that the question of whether Ms. Weise's conduct was unlawful was still open to dispute.

61. The false statements by Colorado Springs officials, were intended to ridicule, discredit, and defame Ms. Weise, paint a portrait of her to the public as someone lacking credibility and honesty, and to embarrass, harass and silence her from discussing the misrepresentations and false statements being made by Colorado Springs about her and about the Air Quality Study. The false statements were in direct retaliation for Ms. Weise's speech regarding the Air Quality Study.

62. Colorado Springs' coordinated campaign to malign Ms. Weise by attacking her credibility and character continued after the Colorado Court of Appeals dismissed Colorado Springs' request for punitive sanctions against her.

63. After making false statements with the purpose of discrediting Ms. Weise, Colorado Springs (and its officials) continued a campaign of retaliation against Ms. Weise because of her First Amendment protected speech informing the public of the serious environmental hazard that was lurking in the air they were breathing; an environmental hazard that Colorado Springs was all too quick to attempt to hide from its residents in service of a pollution spewing entity of the municipal government which the public entrusts for their safety.

64. Ms. Weise is a lawyer who holds a current license in good standing in the State of California; in inactive status in the State of New York, and in retired status in the State of Pennsylvania.

65. In March 2017, the Colorado Springs City Council voted to take formal action against Ms. Weise in all states that she holds professional licensure, both active and inactive. The vote

was held in closed session. The members of the Colorado Springs City Council at the time it voted to file formal actions against Ms. Weise concerning her professional licensures were Tom Strand, Bill Murray, Helen Collins, Keith King, Jill Gaebler, Andres Pico, Larry Bagley, Don Knight, and Merv Bennett. The Colorado Springs City Council voted to take this retaliatory action against Ms. Weise because of her speech regarding the Martin Drake Power Plant to the Colorado Springs Gazette and others.

66. In April 2017 and in accordance with the directives from the Colorado Springs City Council, Wynetta Massey, Colorado Springs' City Attorney, authored and filed the formal actions with the multiple states that Ms. Weise holds professional licensures, both active and inactive.  The formal actions contain false and misrepresentational statements about Ms. Weise including that Ms. Weise had violated one or more court orders, was not prompt in informing the court, and that Ms. Weise had unlawfully disclosed government records.

67. All three formal actions lodged against Ms. Weise concerning her professional licensures were wholly in retaliation for her First Amendment protected speech on this matter of grave public concern.

68. Ms. Massey did not phrase her statements in the formal actions against Ms. Weise's professional licensures as though they were merely an opinion or in such a way as to reasonably imply that the question of whether Ms. Weise's conduct was unethical, improper and/or illegal was still open to dispute.

69. The false statements contained in the formal actions against Ms. Weise's professional licensures by Ms. Massey falsely accused Ms. Weise of professional misconduct and illegal conduct and, therefore, constitute defamation *per se*.

70. The attorney preparation costs and the shipping costs for delivering the formal actions against Ms. Weise's professional licensures were paid by Colorado Springs.

71. The formal actions against Ms. Weise's professional licensures authored by Ms. Massey were submitted on official Colorado Springs letterhead.

72. The Colorado Springs City Council voted in closed session to file the formal actions against Ms. Weise's professional licensures.

73. The Colorado Springs City Council is the final policymaker for Colorado Springs.

74. By submission of these frivolous formal actions against Ms. Weise's professional licensures, Colorado Springs, through its City Attorney Ms. Massey, continued its coordinated campaign to suppress Ms. Weise's speech on a matter of public concern through the use of retaliatory tactics aimed at maligning and defaming her, and portraying her as an unethical lawyer who has committed illegal acts. Through its actions, Colorado Springs and Ms. Massey, has made abundantly clear its motivations – to use the weight and depth of government resources to suppress Ms. Weise's speech and to damage her to the point that she refrains from further exploration and speech of government activities.

75. All of the above cited statements made by Defendants, including the formal actions against Ms. Weise's professional licensures, were made to third parties without any privilege attached to them.

76. As a result of Defendants defamatory statements, Ms. Weise has lost stature in the community.

77. Colorado Springs' retaliatory, illegal treatment of Ms. Weise has been, and continues to be, intentional and made with malice for the ulterior motive to extort multiple benefits to Colorado Springs, including avoidance of: (1) Regulatory responsibilities for its operation of the

Martin Drake Power Plant; (2) Discovery of potential perjury by certain City officials, and (3) Public awareness that the City misrepresented the nature of local air quality to its residents and ratepayers that have been, and still potentially are, subject to unsafe air quality from the Martin Drake Power Plant.

78. Ms. Weise has been forced to obtain counsel in multiple states to defend against the false and defamatory statements made in the formal actions against Ms. Weise's professional licensures. Ms. Weise anticipates having to retain additional counsel to further respond to the formal actions against Ms. Weise's professional licensures.

79. As a result of the coordinated attack on Ms. Weise in retaliation for her truthful statements and lawful actions, Ms. Weise has incurred attorney's fees and litigation-related expenses. Ms. Weise has also had to take significant time away without pay from her employment in her business as sole owner and employee of a business consulting firm. She has suffered damages to her professional reputation, personal reputation, and has lost at least one professional client opportunity because of Defendants' false statements. Ms. Weise has suffered extreme emotional distress and physical injury, including the need by Ms. Weise to seek urgent care medical attention at a medical facility on January 14, 2017, for a stress related illness which left her near physical incapacitation for approximately six weeks thereafter.

80. In making true public statements about the harmful effects of the public utilities in Colorado Springs, Ms. Weise acted lawfully and in the best interests of herself, her family, and her community. The statements she made were truthful and did not violate the law, or the rules of professional conduct in any state, in any way.

**CLAIM ONE**
**42 U.S.C. § 1983 - First Amendment - Violation Regarding Free Speech**
**(Against Defendants Colorado Springs, Wynetta Massey,**
**Tom Strand, Bill Murray, Helen Collins, Keith King, Jill Gaebler,**
**Andres Pico, Larry Bagley, Don Knight, and Merv Bennett)**

81. All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

82. Plaintiff's communication regarding the Air Quality Study is expressive activity protected by the First Amendment.

83. Plaintiff's communication did not violate any law, nor were any court orders determined by a court of law to have been violated by Plaintiff.

84. Defendants' decision to file, and filing of, baseless formal actions against Plaintiff concerning her professional licensures is a content-based or viewpoint-based restriction on speech, or both.

85. Defendants' decision to file, and filing of, baseless formal actions against Plaintiff concerning her professional licensures was a denial of her right to free speech guaranteed by the First Amendment to the Constitution of the United States.

86. By the decision to file, and filing of, baseless formal actions against Plaintiff concerning her professional licensures, Defendants, acting in concert with one another, prevented Plaintiff from speaking out on a matter of public concern.

87. By the decision to file, and filing of, baseless criminal contempt motion and formal actions against Plaintiff concerning her professional licensures, Defendants chilled Plaintiff from exercising her First Amendment rights.

88. Plaintiff was prevented from speaking out on a matter of public concern.

89. The actions of Defendants occurred while each was acting under color of State law.

90. As the chief policy maker for Colorado Springs, based upon the unlawful actions of the Colorado Springs City Council, it is the custom, practice and policy of Colorado Spring to deny Plaintiff the right to speak out on matters of public concern in violation of the First Amendment to the United States Constitution.

91. Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

92. The acts and omissions of Defendants were engaged in pursuant to the customs, policies, and practices of Defendant Colorado Springs, which encourages, condones, tolerates, and ratifies the restraint of speech and expressive activity by its officials of individuals expressing viewpoints critical of Defendant Colorado Springs and/or its officials and/or exercising their rights of free speech and dissent.

93. Plaintiff was prevented by Defendants from delivering her message in violation of the First Amendment to the United States Constitution.

94. Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

95. Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages.

**CLAIM TWO**
**42 U.S.C. § 1983 - First Amendment - Retaliation for Free Speech/Expression**
**(Against Defendants Colorado Springs, Wynetta Massey,**
**Tom Strand, Bill Murray, Helen Collins, Keith King, Jill Gaebler,**
**Andres Pico, Larry Bagley, Don Knight, and Merv Bennett)**

96. All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

97. Plaintiff's communication regarding the Air Quality Study is expressive activity protected by the First Amendment.

98. Plaintiff's speech and expression were related to matters of public concern.

99. Defendants jointly and on their own accord responded to Plaintiff's First Amendment-protected activity with retaliation, including but not limited to filing baseless formal actions concerning professional licensures against Plaintiff for her constitutionally-protected expressive activity.

100.    Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of her First Amendment rights.

101.    By the decision to file, and filing of, baseless formal actions against Plaintiff concerning her professional licensures, Defendants sought to punish Plaintiff for exercising her First Amendment rights and to silence her future speech and restrict her freedom of expression, and the future speech and expression of others. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment-protected activity.

102.    Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

103.    The acts and omissions of Defendants were engaged in pursuant to the customs, policies, and practices of Defendant Colorado Springs, which encourages, condones, tolerates, and ratifies the restraint of speech and expressive activity by its officials of individuals expressing viewpoints critical of Defendant Colorado Springs and/or its officials and/or exercising their rights of free speech and dissent.

104.    Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

105.      At all times relevant to this Complaint, Defendants were acting under the color of law.

106.      Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages.

**CLAIM THREE**
**Defamation *Per Se***
**(Against Defendants Bill Murray, Amy Trinidad, and Wynetta Massey)**

107.      All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

108.      Defendants statements concerned Ms. Weise and were false.

109.      Defendants statements were widely published and not privileged in any manner.

110.      Defendants statements were made with reckless disregard of their truth or falsity and/or with malice.

111.      Defendants statements were libelous *per se* because they allege that Ms. Weise was engaged in criminal conduct.

112.      Defendants statements were libelous *per se* because they allege that Ms. Weise was engaged in professional misconduct.

113.      Defendants statements forever taint and permanently damage Ms. Weise, in the eyes of the Colorado Springs community, as a citizen who lies about matters of public concern, breaks the law, and engages in professional misconduct.

**CLAIM FOUR**
**Defamation *Per Quod***
**(Against Defendants Andres Pico, Bill Murray,**
**Amy Trinidad, and Wynetta Massey)**

114.      All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

115.     Defendants statements concerned Ms. Weise and were false.

116.     Defendants statements were widely published and not privileged in any manner.

117.     Defendants statements were made with reckless disregard of their truth or falsity and/or with malice.

118.     Defendants had no reasonable grounds for believing the truth of their statements. Defendants relied on, at best, circumstantial evidence and lies in making the statements.

119.     Defendants statements forever taint and permanently damage Ms. Weise, in the eyes of the Colorado Springs community, as a citizen who lies about matters of public concern, breaks the law, and engages in professional misconduct.

### CLAIM FIVE
### Defamation by Implication
### (Against Defendants Andres Pico, Bill Murray,
### Amy Trinidad, and Wynetta Massey)

120.     All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

121.     Defendants statements concerned Ms. Weise and indicate the existence of other facts which are defamatory.

122.     Defendants statements were widely published and not privileged in any manner.

123.     Defendants statements were made with reckless disregard of their truth or falsity and/or with malice.

124.     Defendants had no reasonable grounds for believing the truth of their statements. Defendants relied on, at best, circumstantial evidence and lies in making the statements.

125.     Defendants statements forever taint and permanently damage Ms. Weise, in the eyes of the Colorado Springs community, as a citizen who lies about matters of public concern, breaks the law, and engages in professional misconduct.

**CLAIM SIX**
**Intentional Infliction of Emotional Distress/Outrageous Conduct**
**(Against Defendants Andres Pico, Bill Murray,**
**Amy Trinidad, and Wynetta Massey)**

126.     All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

127.     The behavior of Defendants in making false statements about Ms. Weise, for the reasons as described herein, was so outrageous and so extreme that reasonable members of the community would regard such behavior as atrocious, and was done with the intent of causing Ms. Weise severe emotional distress.

128.     Defendants described acts were utterly intolerable, and would lead a reasonable member of the community to conclude that their conduct was extreme and outrageous.

129.     As a result of Defendants conduct, Ms. Weise has suffered actual economic damages and has suffered other injuries, damages and losses, including severe emotional distress and pain and suffering

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in her favor and against Defendants, and grant:

a)  Appropriate declaratory and other injunctive and/or equitable relief;

b)  Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

c)  All economic losses on all claims allowed by law;

d)  Punitive damages on all claims allowed by law and in an amount to be determined at trial;[1]

e)  Attorneys' fees and the costs associated with this action, including those associated with having to defend against the false criminal charge as well as expert witness fees, on all claims allowed by law;

f)  Pre- and post-judgment interest at the lawful rate; and

g)  Any further relief that this court deems just and proper, and any other relief as allowed by law.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated this 13th day of November 2017.

KILLMER, LANE & NEWMAN, LLP

s/ Andy McNulty
_____
David A. Lane
Andy McNulty
Killmer, Lane & Newman, LLC
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
(303) 571-1001
dlane@kln-law.com
amcnulty@kln-law.com

*Attorneys for Plaintiff*

---

[1] Pursuant to COLO. REV. STAT. § 13-21-102(1.5)(a), Plaintiff cannot make a claim for punitive damages on her state law tort claims until later in the litigation, upon a *prima facie* showing of entitlement to such an award.  Plaintiff anticipates making such a showing.

25