# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02696-PAB-NYW

LESLIE WEISE,

    Plaintiff,

v.

COLORADO SPRINGS, COLORADO, a municipality,
ANDRES PICO, in his official and individual capacity,
BILL MURRAY, in his official and individual capacity,
AMY TRINIDAD, in her individual capacity,
WYNETTA MASSEY, in her official and individual capacity,
TOM STRAND, in his official and individual capacity,
HELEN COLLINS, in her official and individual capacity,
KEITH KING, in his official and individual capacity,
JILL GAEBLER, in her official and individual capacity,
LARRY BAGLEY, in his official and individual capacity,
DON KIGHT, in his official and individual capacity,
MERV BENNETT, in his official and individual capacity,

    Defendants.

## ORDER STAYING DISCOVERY

Magistrate Judge Nina Y. Wang

    This action is before the court on Defendants' "Revised Motion for Protective Order to Stay Discovery" ("Motion to Stay") [#19, filed January 29, 2018]. The Motion to Stay was referred to this Magistrate Judge pursuant to the Order of Reference dated December 18, 2017, [#10], and the memorandum dated January 29, 2018, [#20]. Having reviewed the Motion to Stay and associated briefing, the entire case file, and the applicable law, this court **GRANTS** the Motion to Stay.

**FACTUAL BACKGROUND**

Plaintiff Leslie Weise initiated this civil action on November 13, 2017, by filing a Complaint asserting claims for defamation and intentional infliction of emotional distress and for violations of her First Amendment rights pursuant to 42 U.S.C. § 1983, arising from a request for records under the Colorado Open Records Act that Plaintiff submitted to the City of Colorado Springs in August 2015, and a subsequent state court proceeding. *See* [#1]. On January 2, 2018, Plaintiff filed an Amended Complaint asserting a seventh claim for stigma-plus defamation in violation of the Fourteenth Amendment. *See* [#11]. The relevant allegations are taken from the Amended Complaint and are as follows.

> Plaintiff sought records for:
>
> any air quality studies the Colorado Springs Utilities, an enterprise of Colorado Springs, conducted and/or commissioned from its air quality services vendor AECOM Technical Services, Inc. during an official review by the United States Environmental Protection Agency to determine whether the Colorado Springs region had air quality that was in attainment of the National Ambient Air Quality Standard for sulfur dioxide pollution from emissions by the Martin Drake Power Plant.

[#11 at ¶ 27]. On the basis of attorney client privilege and work product, Defendant Colorado Springs declined to release an air quality study AECOM Technical Services, Inc. had conducted at the request of Colorado Springs Utilities in 2015 (the "Air Quality Study"). [*Id.* at ¶ 28]. Plaintiff challenged the privileged status of the Air Quality Study in El Paso County District Court, which ultimately entered judgment for Colorado Springs. [*Id.* at ¶ 29]. Plaintiff appealed the ruling "based on what she believed were errors in fact and law, including factual misrepresentations made by Colorado Springs to the District Court." [*Id.* at ¶ 30].

Upon Plaintiff's filing of the appeal, the clerk's office mailed each of the parties a compilation of electronic files containing the record. The clerk's office inadvertently included in the compilation the privileged Air Quality Study. [*Id.* at ¶¶ 32, 33]. Plaintiff read the Air Quality Study as part of her review of the record, and thereafter filed several motions with the court of appeals seeking both guidance and "immediate publication of the information contained in the Air Quality Study." [*Id.* at ¶¶ 33, 36].

On November 16, 2016, the court of appeals issued an order acknowledging the inadvertent disclosure of the Air Quality Study, directing the parties to return the electronic files they had received, and ordering Plaintiff not to "distribute the sealed material nor download, retain, or disseminate the record." [*Id.* at ¶ 37]. Plaintiff alleges, "[i]mportantly, the Colorado Court of Appeals did not order that [she] could not discuss the sealed material," and further alleges that the court of appeals "confirmed that [she] was not legally barred" from either "sharing her publicly filed motions or speaking about the contents of the documents that had been inadvertently disclosed to her." [*Id.* at ¶ 38]. Plaintiff then shared with a reporter for the Colorado Springs Gazette the first two motions she had filed with the court of appeals. In the motions, Plaintiff stated that: "(1) records affecting public health and safety 'have been improperly withheld' though people near the Martin Drake Power Plant might be exposed to dangerous levels of sulfur dioxide," and mentioned that her son attends grade school at a location within the Martin Drake Power Plant emissions plume; that "(2) Colorado Springs Utilities 'has consistently declared to the public and regulatory authorities that it is in compliance with those (SO2) regulations and standards' though it had a duty to report its findings of violations to the Environmental Protection Agency, and a public safety fiduciary duty to report those findings to

3

the public"; and "(3) withholding the report by citing attorney-client privilege was 'an egregious abuse of the CORA (Colorado Open Records Act) laws.'" [*Id.* at ¶ 39]. Plaintiff also provided comment to the reporter. [*Id.*]

On November 21, 2016, the Colorado Springs Gazette published an article using Plaintiff's observations regarding the Air Quality Study. Specifically, the article quoted Plaintiff's motions, accessible to the public, and stated that the "sulfur-dioxide emissions from the coal-fired Martin Drake Power Plant violated federal standards contrary to filings by Colorado Springs Utilities," and attributed this conclusion to Plaintiff. [#11 at ¶ 40]. Plaintiff asserts the article did not quote the Air Quality Study, and rather acknowledged that she had returned the Air Quality Study to the court of appeals as ordered. [*Id.*] The article quoted Defendant Amy Trinidad, the spokeswoman for Colorado Springs Utilities, disputing Plaintiff's characterization of the Air Quality Study and implying that Plaintiff had "fabricat[ed] her account of the data." [*Id.*]

The day after the article was published, Colorado Springs filed a "Cross Motion for Order to Show Cause" as to why Plaintiff should not be held in contempt of court ("cross motion"), and asked the court of appeals to impose punitive sanctions, such as jail time, attorney fees, and fines, against Plaintiff as a result of her discussing the Air Quality Study with the Colorado Springs Gazette reporter and others. [#11 at ¶ 42]. Plaintiff asserts that Colorado Springs filed the cross motion "explicitly in retaliation for Ms. Weise's First Amendment-protected speech regarding the Air Quality Study and with the purpose of chilling Ms. Weise from speaking further regarding the Air Quality Study," and that, "[d]ue to her fear of prosecution by Colorado Springs, Ms. Weise has not discussed any of the specific contents of the Air Quality Study

4

included in the sealed file subsequent to Colorado Springs filing its [motion]," and rather "has only repeated the generalizations of the Air Quality Study that she had previously made prior to the filing of the [motion] (which were already in the public record and which Ms. Weise had confirmed complied with the Colorado Court of Appeals' November 16, 2017 and November 17, 2017 orders)." [*Id.* at ¶¶ 43, 44]. On February 8, 2017, the cross motion was dismissed with prejudice. [*Id.* at ¶ 46].

Plaintiff alleges that along with filing the cross motion, multiple Colorado Springs officials negligently, or intentionally, made numerous false and defamatory statements about her and her comments regarding the Air Quality Study to members of the public, "including statements made to the Colorado Springs Gazette, to concerned citizens, and during public meetings." [#11 at ¶ 48]. She further alleges that the statements "were part of a campaign by Colorado Springs officials to publicly discredit [her], and vilify her within the Colorado Springs community, in the hopes that the alarming results of the Air Quality Study Colorado Springs Utilities had commissioned using public funds could be swept under the rug." [*Id.*] For support, Plaintiff describes specific instances in which Defendants Andres Pico, a member of the Colorado Springs City Council and former Colorado Springs Utilities Board Chair, Bill Murray, a member of the Colorado Springs City Council and Colorado Springs Utilities Board Member, and Defendant Trinidad told members of the public that Plaintiff acted illegally and lied about the implications of the Air Quality Study. *See* [*id.* at ¶¶ 49-60].

Plaintiff represents that she holds a license to practice law in California and is in good standing with that bar, that she holds an inactive license to practice in New York, and that she holds a license in retired status in Pennsylvania. [#11 at ¶ 64]. In March 2017, the Colorado

Springs City Council voted in a closed session to file formal complaints in these states that Plaintiff "had violated one or more court orders, was not prompt in informing the court, and that [Plaintiff] had unlawfully disclosed government records," all of which are charges Plaintiff disputes. [*Id.* at ¶¶ 65, 66]. Defendants Tom Strand, Bill Murray, Helen Collins, Keith King, Jill Gaebler, Andres Pico, Larry Bagley, Don Knight, and Merv Bennett comprised the Colorado Springs City Council at the time it voted to file complaints against Plaintiff. [*Id.* at ¶ 65]. Plaintiff alleges the Colorado Springs City Council decided to file the complaints against her as retaliation for "her speech regarding the Martin Drake Power Plant to the Colorado Springs Gazette and others." [*Id.*] The following month, Defendant Wynetta Massey, the city attorney for Colorado Springs, authored and filed the formal actions in California, New York, and Pennsylvania. [*Id.* at ¶ 66]. Plaintiff alleges that the accusations regarding professional misconduct and illegal conduct stated in the formal actions are false and constitute defamation *per se*. [*Id.* at ¶ 69].

In sum, Plaintiff asserts that with respect to the events described herein, she "acted lawfully and…[t]he statements she made were truthful and did not violate the law, or the rules of professional conduct in any state, in any way." [#11 at ¶ 81]. She alleges, as a result of Defendants' actions, she has lost stature in her community, has been required to defend herself against the formal complaints Colorado Springs filed against her in the states in which she is licensed, has incurred litigation fees, and has suffered emotional distress and loss of business opportunity. [*Id.* at ¶¶ 78-80].

Plaintiff asserts her first and second claims for violation of her First Amendment rights regarding free speech and retaliation against all Defendants other than Amy Trinidad. [#11 at

19, 21]. Plaintiff asserts her third claim for defamation *per se* against Defendants Bill Murray, Amy Trinidad, and Wynetta Massey. [*Id.* at 22]. Plaintiff asserts her fourth claim for defamation *per quod*, fifth claim for defamation by implication, and sixth claim for intentional infliction of emotional distress against Defendants Andres Pico, Bill Murray, Amy Trinidad, and Wynetta Massey. [*Id.* at 23-24]. Finally, Plaintiff asserts her seventh claim for stigma-plus defamation in violation of the Fourteenth Amendment against all Defendants. [*Id.* at 24]. Plaintiff seeks in relevant part declaratory and injunctive relief and "[c]ompensatory and consequential damages." [*Id.* at 26]. She sues all of the individual defendants in their individual and official capacity, with the exception of Amy Trinidad, whom she sues in her individual capacity only. The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**PROCEDURAL BACKGROUND**

The court initially set a Scheduling Conference to occur January 19, 2018, [#7], and then reset the Scheduling Conference to February 23, 2018. [#16]. Defendants the city of Colorado Springs, Andres Pico, Bill Murray, Amy Trinidad, Wynetta Massey, Tom Strand, Helen Collins, Keith King, Jill Gaebler, Larry Bagley, Don Knight, and Merv Bennett (collectively, "Defendants") thereafter filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) asserting absolute immunity, qualified immunity, and immunity under the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § § 24-10-101 to -120. [#17]. Defendants concurrently filed the Motion to Stay, asking the court to vacate the Scheduling Conference and stay discovery in its entirety pending resolution of the Motion to Dismiss. [#19]. Mindful of the relief requested in the Motion to Stay, this court reset the Scheduling Conference

7

to March 8, 2018. *See* [#21]. Plaintiff filed a Response on February 8, 2018, [#23], and Defendants filed a Reply on February 28, 2018, [#33].

On February 20, 2018, Plaintiff filed a Motion for Leave to file a Second Amended Complaint, seeking to add several factual allegations in support of her claims for Defamation and an eighth claim for Abuse of Process, which she would assert against all individual Defendants other than Defendant Trinidad. *See* [#30, #30-1, #30-2]. This court consequently vacated the Scheduling Conference to be reset at a later date. [#32]. Concurrently with this Order, the undersigned issued a Recommendation that the court grant the Motion to Amend.

## ANALYSIS

**I.     Applicable Law**

**A.     Imposing a Stay**

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings; however, the power to stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (citing *Kansas City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)). *See also* Fed. R. Civ. P. 26(c) (authorizing the court to issue, for good cause shown, "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Although courts in this District generally disfavor the stay of all discovery, *see Wason Ranch Corporation v. Hecla Mining Co.*, No. 07–cv–00267–EWN–MEH, 2007 WL 1655362, at *1 (D. Colo. June 6, 2007), such a stay may be appropriate pending the resolution of a dispositive motion, *Ellis v. J.R.'s County Stores, Inc.*, 12-cv-01916-CMA-KLM, 2012 WL 6153513, at *1 (D. Colo. Dec. 11, 2012).

In determining whether a stay is appropriate, the court weighs interests such as whether defendants are likely to prevail in the civil action, whether defendants will suffer irreparable harm, whether the stay will cause substantial harm to other parties to the proceeding, and the public interests at stake. *United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). The court may also consider plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay, the burden on the defendants, and the convenience to the court. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02–CV–01934–LTB–PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (citing *FDIC v. Renda,* No. 85–2216–O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987)). "[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided." *Ellis*, 2012 WL 6153513, at *1 (quoting 8 Charles Alan Wright, et al., *Federal Practice & Procedure* § 2040, at 521–22 (2d ed.1994)) (further citations omitted). *See also Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.") (internal quotation marks and citation omitted).

### B. Immunities

*Absolute Immunity*. Absolute prosecutorial immunity is a complete bar to a suit for damages under 42 U.S.C. § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976). "The rationale for according absolute immunity in the civil rights context is to incorporate traditional common law immunities and to allow functionaries in the judicial system the latitude to perform

their tasks absent the threat of retaliatory § 1983 litigation." *Snell v. Tunnell*, 920 F.2d 673, 686-87 (10th Cir. 1990). Whether absolute immunity is available is generally a question of law, and the party asserting the defense has the burden of demonstrating its applicability. *See Burns v. Reed,* 500 U.S. 478, 486 (1991) ("the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question") (citations omitted). *See also Forrester v. White*, 484 U.S. 219, 224 (1988) (Officials who "seek exemption from personal liability" on the basis of absolute immunity bear "the burden of showing that such an exemption is justified by overriding considerations of public policy"); *Buckley v. Board of County Com'rs of County of El Paso*, No. Civ. 04CV02465LTBPAC, 2005 WL 2359475, at *6 (D. Colo. Sept. 19, 2005). The defense of absolute immunity from civil rights suits applies in several contexts. For instance, "[a] prosecutor is absolutely immune for activities which are intimately associated with the judicial process, such as initiating and pursuing a criminal prosecution." *Snell*, 920 F.2d at 686 (quoting *Imbler*, 424 U.S. at 430). Prosecutorial immunity applies equally to "state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings." *Buckley*, 2005 WL 2359475, at *6 (quoting *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir. 1991) (holding that prosecutors are "absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution.") (quotation omitted)). *See also Robins v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 (10th Cir. 1991).

However, the same limitations that apply to granting absolute immunity to prosecutors also apply to other government officials, and, traditionally, immunity "does not extend to a prosecutor's actions which may be classified as administrative or investigative." *Imbler*, 424

U.S. at 430–31; *Harlow v. Fitzgerald*, 457 U.S. 800, 811 n.16 (1982)). The Supreme Court has been "quite sparing" in recognizing absolute immunity, and generally evaluates entitlement to absolute immunity according to the local official's function, rather than his or her identity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). *See also Dillard v. Gregory*, No. 11–cv–01928–RBJ–BNB, 2012 WL 5056932, at *5 (D. Colo. Oct. 18, 2012) ("Absolute immunity 'is justified and defined by the functions it protects and serves, not by the person to whom it attaches'") (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988) (emphasis in original)). In assessing which acts are entitled to absolute immunity, the "determinative factor is advocacy because that is the prosecutor's main function and the one most akin to his quasi-judicial role." *Snell*, 920 F.2d at 693 (citation and internal quotation omitted).

*Qualified Immunity*. Section 1983 of Title 42 of the United States Code "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting *Cillo v. City of Greenwood Village,* 739 F.3d 451, 459 (10th Cir. 2013)). The defense of qualified immunity is available to individual defendants named in a § 1983 action, and "shields public officials…from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline,* 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). Generally, after the defendant asserts qualified immunity, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Estate of Booker*, 745 F.3d at 411 (quoting *Cillo,* 739 F.3d at 460).

> *CGIA*.  The CGIA provides as follows:
>
> [a] public employee shall be immune from liability in any claim for injury ... which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing injury was willful and wanton...

Colo. Rev. Stat. § 24-10-118(2)(a). The CGIA covers "all the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable in actions which lie in tort," *id.* at § 24-10-102, and "[g]overnmental immunity raises a jurisdictional issue." *Springer v. City & County of Denver*, 13 P.3d 794, 798 (Colo. 2000). Where applicable, the CGIA confers immunity to defendants, unless the defendants' conduct was willful and wanton. *See Middleton v. Hartman*, 45 P.3d 721, 728 (Colo. 2002) ("the state is not liable for its employees' willful and wanton conduct"); *Gray v. University of Colorado Hosp. Authority*, 284 P.3d 191, 197 (Colo. App. 2012) ("the sovereign immunity of public entities is not waived if their employees' acts or omissions are willful and wanton.").

## II.     Application

Defendants argue that a stay is appropriate because they have raised three types of immunities. Specifically, Defendants contend that they are entitled to a stay in their individual capacity with respect to the § 1983 claims due to absolute and qualified immunity, and that they all are entitled to a stay with respect to the state law tort claims due to governmental immunity under the CGIA. [#19 at 8]. Defendants acknowledge that application of these immunities would not bar Plaintiff's claims as to the City of Colorado Springs and the individual Defendants sued in their official capacity with respect to the § 1983 claims, but assert that the "claims presented in this case are inextricably intertwined, such that a complete stay of discovery on all

claims against all Defendants is appropriate." [*Id.* at 9]. Defendants also argue that Plaintiff's First Set of Written Discovery is "extremely broad," and "would be a substantial distraction for Defendants, such as City Attorney Wynetta Massey, City Utilities spokesperson Amy Trinidad, and all the sitting City Council members, to have to devote the attention necessary to respond to such discovery." [*Id.*] *See* [#19-1].

Plaintiff argues in response that a blanket stay of discovery is unwarranted. First, Plaintiff asserts, qualified immunity provides no basis for staying discovery relevant to her *Monell* claim against the City of Colorado Springs. Second, the claims against the City "share a common core of facts with the other claims and, therefore, there is no effective way of staying discovery with respect to the Section 1983 claim(s) and permitting discovery to move forward on the other claims." [#23 at 4 (internal quotation marks omitted)]. Finally, Plaintiff argues that Defendants may address any concerns they have about the scope of her discovery requests through targeted objections, rather than a blanket protective order.

While I agree with Plaintiff's general position that neither the Federal Rules of Civil Procedure nor controlling case law in this District and Circuit provide for the court to automatically stay a proceeding upon the filing of a dispositive motion or assertion of an immunity, I find that the circumstances of this case warrant a stay as requested by Defendants.

Immunity provisions, whether absolute or qualified, serve to spare officials from unwarranted liability as well as "demands customarily imposed upon those defending a long drawn out lawsuit," and are "effectively lost if a case is erroneously permitted to go to trial." *Siegert v. Gilley,* 500 U.S. 226, 232 (1991) (quoting in part *Mitchell v. Forsyth*, 472 U.S.

13

511, 525 (1985)). With respect to qualified immunity, the United States Court of Appeals for the Tenth Circuit has explained:

> Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an *immunity from suit* rather than a mere defense to liability...Accordingly, qualified immunity questions should be resolved at the earliest possible stage in litigation. *Even such pretrial matters as discovery are to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of effective government.*

*Martin v. County of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015) (quoting *Jiron v. City of Lakewood,* 392 F.3d 410, 414 (10th Cir. 2004) (emphasis in original)). Thus, "discovery generally should be avoided once qualified immunity is raised," unless the plaintiff demonstrates "how [such] discovery will raise a genuine fact issue as to the defendants' qualified immunity claim." *Id.* (quoting *Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1387 (10th Cir.1994)).

As Plaintiff asserts, the invocation of qualified immunity is not a bar to all discovery, however. The protection the doctrine affords does not extend to governmental entities or individuals sued in their official capacity, and it has no application to claims for declaratory or injunctive relief. *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004). Indeed, "[l]imited discovery may be necessary when the doctrine is asserted in a motion for summary judgment on contested factual assertions." *Id.* (citing *Crawford–El v. Britton*, 523 U.S. 574, 593, n.14 (1998)). In her Response, Plaintiff argues against the court staying discovery pertaining to her individual capacity claims on account that "discovery is often necessary to resolve immunity or jurisdictional issues," but she does not articulate what discovery she requires to resolve such issues. *See* [#23 at 5]. It is Plaintiff's responsibility, not the court's, to determine and then describe what limited discovery may be necessary notwithstanding the well-supported assertion of immunity. I find she fails to do that here.

14

With respect to the CGIA, the Colorado Supreme Court has instructed that the trial court should not proceed with a tort claim until it satisfies itself that defendants acted willfully and wantonly, thereby confirming that those defendants are not entitled to sovereign immunity. *Martinez v. Estate of Bleck*, 379 P.3d 315, 322 (Colo. 2016) (holding that "the trial court erred when it failed to determine whether [defendant's] conduct was willful and wanton… [i]nstead, it determined that [plaintiff] had sufficiently pled that [defendant] acted in a willful and wanton manner, and that the ultimate determination of whether he in fact acted willfully and wantonly had to be left to trial."). And the statute states that once the issue of governmental immunity is raised, "the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity, and shall decide such issue on motion." Colo. Rev. Stat. § 24–10–108. In her Response, Plaintiff does not specifically address why discovery relevant to the state law claims should proceed in the face of Defendants' assertion of the CGIA; and, significant to the precise inquiry at issue here, she does not describe the discovery she requires to demonstrate the willful and wanton conduct.

This court acknowledges that some claims and certain Parties will remain even if the court finds that all three immunities apply, and that structuring discovery to proceed in a piecemeal fashion is appropriate in certain instances. *See Rome*, 225 F.R.D. at 644-45. However, as the Parties concede, at the heart of the matter impacting all of Plaintiff's claims is whether she acted in contravention of the order issued by the court of appeals. The commonality of discovery relevant to those claims is such that any benefit derived by Plaintiff moving forward with piecemeal discovery is outweighed by both the corresponding inefficiencies (and disputes such discovery would generate) and the risk that immunities ultimately found to be applicable

were disregarded.  *See Ashcroft v. Iqbal*, 556 U.S. 552, 685-86 (2009) ("It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position…[e]ven if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.").  A better course of action is simply to plan for and proceed with discovery once there is an understanding of which claims and Defendants will move forward.

Additionally, the action was initiated in November 2017 and is relatively young, and there remains ample time for the Parties to engage in discovery following the court's determination of which, if any, immunities are applicable.  This court acknowledges that the events giving rise to the action occurred in late 2016 and early 2017, and that relevant discovery in the form of memories to be testified to and documents to be produced may be compromised as time passes, but ultimately finds that this consideration does not outweigh the importance of the court first determining the applicability of the immunities at issue.  Moreover, Plaintiff does not identify specific discovery, such as a witness or Party's testimony or otherwise, that she fears will be inaccessible due to a stay in this matter.  Accordingly, in addition to the findings stated above with respect to the specific immunities at issue, I find that the considerations set forth in *String Cheese* weigh in favor of a stay.  *See String Cheese Incident, LLC*, 2006 WL 894955, at *2.  The case will remain stayed until the court rules on the Motion to Dismiss, either in its current form or in an amended form, or unless Judge Brimmer grants the Motion to Amend and Defendants file an Answer to the Second Amended Complaint (instead of a dispositive motion).  It is therefore

**ORDERED** that the Revised Motion for Protective Order to Stay Discovery [#19] is **GRANTED**.

DATED: April 5, 2018

BY THE COURT:

_____
United States Magistrate Judge